UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KEITH WAGNER, on behalf of himself
and all others similarly situated,

        Plaintiff,

vs.

JPMORGAN CHASE & CO., J.P.
MORGAN CLEARING CORP., J.P.
MORGAN SECURITIES INC., J.P.
MORGAN FUTURES INC., HSBC
HOLDINGS PLC, HSBC SECURITIES
(USA) INC., and HSBC BANK USA,
NATIONAL ASSOCIATION,

        Defendants,

Case No. _____

ECF



'10 CIV 08479

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

---

    Plaintiff Keith Wagner, on behalf of himself and all others similarly situated, brings this action for damages against JPMorgan Chase & Co., J.P. Morgan Clearing Corp.; J.P. Morgan Securities Inc.; J.P. Morgan Futures Inc. (collectively, "JPMorgan"); HSBC Holdings PLC; HSBC Securities (USA) Inc.; and HSBC Bank USA, National Association (collectively, "HSBC"), for violations of the Section 22(a)(1) of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 25(a)(1), and Section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiff alleges:

### NATURE OF CLAIM

    1.    This action arises from defendants' conspiracy to intentionally and unlawfully suppress and manipulate the price of Commodity Exchange, Inc. ("COMEX") silver futures and options contracts between at least June 1, 2008 through March 31, 2010 ("Class Period"), in violation of Section 22(a)(1) of the CEA, and Section 1 of the Sherman Act, 15 U.S.C. § 1.

2. During the Class Period, the defendants engaged in a scheme to manipulate and suppress the market for COMEX silver futures and options contracts. In connection with its acquisition of Bear Stearns & Co., Inc. ("Bear Stearns") in June 2008, defendant JPMorgan acquired massive short positions in the silver futures market. Thereafter, JPMorgan, with HSBC, artificially depressed the price of silver dramatically downward. The conspiracy and scheme was enormously successful, netting the defendants substantial illegal profits.

3. The conspiracy and scheme has been corroborated by a 40-year industry veteran and former employee of Goldman Sachs ( the "Informant") who was told by representatives of the defendants about the conspiracy and scheme. The Informant has stated that he had been told first hand by traders at JPMorgan that JPMorgan manipulates the silver market. The JPMorgan traders would brag to the Informant about how much money they were making as a result of such manipulation.

4. The Informant reported the defendants' activities to the U.S. Commodity Futures Trading Commission ("CFTC"), which has opened an investigation into the manipulation of the silver market. On October 26, 2010, CFTC Commissioner Bart Chilton announced that there have been "violations of the Commodity Exchange Act in the silver market." Specifically, Commissioner Chilton concluded, "[T]here have been fraudulent efforts to persuade and deviously control" prices in the silver market, which "should be prosecuted."

5. In addition to the CFTC, the Antitrust Division of the United States Department of Justice is conducting a criminal investigation into the manipulative activities of defendants in the silver market.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under Sections 4 and 16 of the Clayton Act, 15 U.S.C. § 15(a) and 26, Section 22 of the CEA, 7 U.S.C. §25, and 28 U.S.C. §§ 1331 and 1337.

7. Venue is proper in this district pursuant to Sections 4(a) and 12 of the Clayton Act, 15 U.S.C. §§ 15 and 22, 7 U.S.C. § 25(d) and 28 U.S.C. § 1391 (b)-(d). Almost all of the defendants are headquartered in this district, all defendants transact business in this district, and plaintiff's claims arose in part in this district. The interstate trade and commerce described herein was carried out, in part, within this district, and unlawful acts done in violation of the Sherman Act and Commodity Exchange Act occurred within this district.

8. This Court has *in personam* jurisdiction over each of the defendants because, *inter alia*, each defendant: (a) transacted business in the United States, including in this District; (b) had substantial aggregate contacts with the United States as a whole and in this District; and/or (c) was engaged in an illegal conspiracy that was directed at, and had the intended effect of causing injury to, persons and entities residing in, located in, or doing business throughout the United States, including in this District.

## PARTIES

### Plaintiff

9. Plaintiff Keith Wagner ("Wagner") is a resident of the State of California. During the Class Period, Wagner traded COMEX silver futures and options contracts, and was injured as a result of defendants' anticompetitive acts and market manipulation activities described in this Complaint.

**Defendants**

10. Defendant JPMorgan Chase & Co. is a Delaware financial holding company with its principal place of business in New York, New York. JPMorgan Chase & Co. is a leading global financial services firm and one of the largest banking institutions in the United States.

11. Defendant J.P. Morgan Clearing Corp. ("JPMC"), formerly known as Bear, Stearns Securities Corp., is a Delaware corporation with its corporate offices in Brooklyn, New York. JPMC is a subsidiary of J.P. Morgan Securities Inc. which is a wholly owned subsidiary of JPMorgan Chase & Co. JPMC is a registered Futures Commission Merchant with the CFTC.

12. Defendant J.P. Morgan Securities Inc. ("JPMS") is a Delaware corporation with its principal place of business in New York, New York. JPMS is a wholly owned subsidiary of JPMorgan Chase & Co. JPMS, through JPMC, provides securities and futures clearing, customer financing, securities lending and related services.

13. Defendant J.P. Morgan Futures Inc. ("JPMFI") is a Delaware corporation with its principal place of business in New York, New York. JPMFI is a U.S. Futures Commission Merchant and wholly owned subsidiary of JPMorgan Chase & Co. JPMFI provides research, sales, execution and clearing services in futures and options across fixed income, equity, foreign exchange and commodity asset classes. JPMFI holds the U.S. accounts of JPMorgan Chase's global futures and options business customers.

14. Defendant HSBC Holdings plc ("HSBC Holdings") is a United Kingdom public limited company with its corporate headquarters in London, England. As of 2009, HSBC Holdings was the world's largest banking group and the world's sixth largest company according to Forbes Magazine.

15. Defendant HSBC Securities (USA) Inc. ("HSBC USA") is a Delaware corporation with a corporate office located in New York, New York. HSBC USA is a wholly owned subsidiary of HSBC Markets (USA) Inc. whose ultimate parent is HSBC Holdings plc. HSBC USA is a registered broker-dealer of securities under the Securities Exchange Act of 1934 and is a registered Futures Commission Merchant with the CFTC.

16. Defendant HSBC Bank USA, National Association ("HSBC NA") is a Texas company with an office in Wilmington, Delaware.

## UNNAMED CO-CONSPIRATORS

17. Various other entities and individuals not named as defendants in this Complaint participated as co-conspirators in the acts complained of, and performed acts and made statements which aided and abetted and was in furtherance of the unlawful conduct alleged herein.

## THE RELEVANT MARKET

18. The relevant market, which was the target of defendants' anticompetitive and unlawful scheme, is COMEX silver futures and options contracts.

19. On the COMEX, contract rollover occurs each month when a futures contract holder exchanges (rolls over) an expiring contract position for a contract position which expires at a later date.

20. On the COMEX, the expiration date of an options contract, or "Options Expiry," is the day on which an options contract is no longer valid and therefore, ceases to exist.

## FACTUAL ALLEGATIONS

21. The silver futures market is a thinly traded market. The relatively sparse number of silver futures contracts regularly traded on COMEX enabled the defendants to manipulate the price of silver futures and options contracts by flooding the market with a disproportionate number of contracts.

22. The market for COMEX silver futures and options contracts is highly concentrated with very few large banks controlling a large number of futures and options contracts. As an example, in August 2008, defendants JPMorgan and HSBC controlled over 85% of the commercial net short positions in COMEX silver futures contracts and 25% of all open interest short positions.

23. In March 2008, it was announced that JPMorgan would acquire Bear Stearns. Bear Stearns had amassed a significant short position in COMEX silver futures and options contracts. In fact, Bear Stearns' bearish bets on silver futures contracts were so large, that, at the time of JPMorgan's purchase of Bear Stearns, commentators suggested that the Federal Reserve helped orchestrate a bailout of Bear Stearns because Bear Stearns was on the verge of having to cover its silver short positions. Although JPMorgan's acquisition of Bear Stearns was announced in March 2008, the transaction did not close until June 1, 2008.

24. Once JPMorgan acquired Bear Stearns' commodities portfolio, it determined that it would further undertake massive short positions in the silver market and did in fact substantially increase its short positions. Defendants have consistently maintained their massive short positions at critical times throughout the Class Period, controlling a significant percentage of open interest positions in the silver market. Together, JPMorgan and HSBC controlled 96% of all precious metals derivative contracts besides gold (which include silver).

25. Defendants have maintained a market share in excess of 90% of all precious metals derivative contracts, excluding gold, throughout the Class Period.

26. In September 2008, the CFTC commenced an investigation into manipulation in the silver market after receiving numerous communications alleging that silver futures prices were being manipulated downward.

27. In November 2009, an informant (the "Informant") contacted the CFTC Enforcement Division and reported defendants' illegal conspiracy to manipulate and suppress the prices of COMEX silver futures and options contracts.

28. In his communications with the CFTC, the Informant described how JPMorgan silver traders communicated with market participants in advance of their manipulation, so that they, along with other traders, could reap enormous profits by artificially and unlawfully suppressing and manipulating the price of COMEX silver futures and options contracts.

29. For example, in a January 26, 2010 email from the Informant to representatives of the CFTC, including Commissioner Chilton, the Informant stated:

> I thought you might be interested in looking into the silver trading today. It was a good example of how a single seller, when they hold such a concentrated position in the very small silver market, can instigate a selloff at will.
>
> The events trade to a regular pattern and we see orchestrated selling occur 100% of the time at options expiry, contract rollover, non-farm payrolls (no matter if the news is bullish or bearish), and in a lesser way at the daily silver fix.

30. According to the Informant, JPMorgan conspired with HSBC and other co-Conspirators, prompting them to join JPMorgan's artificial suppression and manipulation of the price of COMEX silver futures and options contracts by flooding the market with short positions.

31. The communications among defendants was done at least on a monthly basis on or around the dates of certain key events, including the United States Department of Labor's issuance of non-farm payroll reports, which are released during the first week of each month; at the time of Options Expiry on the last four business days of each month; and during COMEX silver futures contract roll-over.

32. Specifically, the Informant explained "how there are routine market manipulations at the time of [Option Expiry], non-farm payroll data releases, and COMEX contract rollover, as well as ad-hoc events."

33. Additionally, the Informant described manipulative acts that defendants employed on a daily basis. During certain times of the day (typically when trading volume on the COMEX is light), defendants rapidly dumped large numbers of COMEX silver futures contracts at or around the same suppressed price. It was understood among defendants and their co-conspirators that the price of these contracts would set the direction of silver futures contracts prices for that day. As the Informant explained in an email to Eliud Ramirez, Senior Investigator for the CFTC's Enforcement Division, dated January 26, 2010 (the same email described above):

> As an example, if you look at the trades just before the pit open today you will see around 1,500 contracts sell at once where the bids were tiny by comparison in the fives and tens. This has the immediate effect of gaining $2,500 per contract on the short positions against the long holders, who lose that in moments and likely were stopped out.

34. In a subsequent email to Ramirez, dated February 3, 2010, the Informant told the CFTC that defendants intended to depress the prices of COMEX silver futures and options contracts two days later, at or around the time of the announcement of the non-farm payroll report. The Informant then predicted in an email how the manipulation would play out:

8

Thought it may be helpful to your investigation if I gave you the heads up for a manipulative event signaled for Friday 5th Feb. The non-farm payrolls number will be announced at 8.30 ET. There will be one of two scenarios occurring, and both will result in silver (and gold) being taken down with a wave of short selling designed to take out obvious support levels and trip stops below . . . it is an example of just how easy it is to manipulate a market if a concentrated position is allowed by a very small group of traders.

Scenario 1. The news is bad (employment is worse). This will have a bullish effect on gold and silver as the U.S. dollar weakens and the precious metals draw bids, spiking them higher. This will be sold into within a very short time (1-5 mins) with thousands of new short contracts being added, overcoming any new bids and spiking the precious metals down hard, targeting key support levels.

Scenario 2. The news is good (employment is better than expected). This will result in a massive short position being instigated almost immediately with no move up. This will not initially be liquidation of long positions but will result in stops being triggered, again targeting key support levels.

Both scenarios will spell an attempt by the two main short holders [JPMorgan and HSBC] to illegally drive the market down and reap very large profits. Locals such as myself will be "invited" on board which will further add downward pressure.
Only if a market is manipulated could this possibly occur.

35. On February 5, 2010, the Informant again emailed the CFTC to discuss a manipulation that was taking place:

> If you get this in a timely manner, with silver at 15.330 post data, I would suggest you look at who is adding short contracts in the silver contract while gold still rises after [non-farm payroll] data. It is undoubtedly the concentrated short who has "walked silver down" since Wednesday, putting large blocks in the way of bids. This is clear manipulation as the long holders who have been liquidated are matched by new short selling as open interest is rising during the decline.
>
> There should be no reason for this to be occurring other than controlling silver's rise. There is an intent to drive silver through the 15 level stops before buying them back after flushing out the long holders.

36. Again, on February 5, 2010, the Informant emailed Ramirez "to confirm that the silver manipulation was a great success and played out EXACTLY to plan as predicted."

37. The Informant added, "[h]ow would this [be] possible if the silver market was not in the full control of [JPMorgan and HSBC]…I hope you took note of how and who added the short sales (I certainly have a copy) and I am certain you will find it is the same concentrated shorts [JPMorgan and HSBC] who have been in full control since [JPMorgan] took over the Bear Stearns position."

38. In March 2010, the Informant went public with his allegations and revealed his emails to the CFTC predicting certain market movements.

39. After March 2010, defendants began to unwind their massive short positions. As reflected in the CFTC Bank Participation reports, the net short position of silver futures held by commercial banks, of which defendants comprise the vast majority, have been reduced by more than 30% since March 2010.