40.     As defendants' short positions in COMEX silver futures contracts have

decreased, the price of silver has risen dramatically.  Silver has gained 40 percent this year, touching

$24.78 an ounce on November 1, its highest level in 30 years.

41.     According to an October 27, 2010 article published in the *Wall Street*

*Journal*, the CFTC's enforcement staff has circulated a packet of information to CFTC lawyers and

commissioners outlining some of its findings in the silver probe, including documents that could

suggest there have been attempts to manipulate prices.

42.     According to the same article, CFTC lawyers have interviewed employees

of JPMorgan in its metals-trading business as well as industry traders, commodity executives,

experts and employees of other metals-trading firms.

43.     The article also cites a CFTC weekly report for October 19, the then most

recent period, showing that less than four market players hold 24.3% of all net bearish bets in the

silver market.  Importantly, relying on silver traders and a person close to the investigation, the

article confirms that defendants JPMorgan and HSBC are among those market participants.

44.     On October 26, 2010, CFTC Commissioner Bart Chilton announced that

there have been "violations of the Commodity Exchange Act in the silver market."  Specifically,

Commissioner Chilton concluded, "[t]here have been fraudulent efforts persuade and deviously

control" prices in the silver market, which "should be prosecuted."  Commissioner Chilton indicated

that the CFTC investigation was continuing and added that he was "hopeful that the agency will

speak publicly about the investigation in the very near future."

**Other Factors Supporting the Conspiracy Alleged Herein**

45.    There are various structural and other market characteristics of the COMEX silver futures and options contracts market which make it susceptible to the conspiracy and manipulative activities that are alleged in this Complaint.

46.    COMEX silver futures and options contracts are interchangeable and highly standardized. Indeed, the COMEX specifies the terms of each contract, including the trading units, price quotation, trading hours, trading months, minimum and maximum price fluctuations and margin requirements. When products offered are viewed as interchangeable by market participants, it is easier to unlawfully agree on the price for the product in question, and it is easier to effectively monitor agreed-upon prices.

47.    Defendants specifically intended to manipulate the price of COMEX silver futures and options contracts during the Class Period. Defendants consistently profited from the artificially lower or suppressed COMEX silver futures prices because, throughout the Class Period, they maintained significant short positions in COMEX silver futures and options contracts.

48.    Upon information and belief, a significant portion of defendants' short positions in the COMEX silver futures contracts were acquired through naked short selling, that is, defendants would contract to sell in the future silver which they did not own or had made no provisions to borrow. Such naked short selling, unconstrained by the actual amount of silver owned or available to the short seller, enabled defendants to more effectively suppress and manipulate COMEX silver futures and options contracts during the Class Period.

49.    Defendants are members of various industry trade associations such as the Futures Industry Association ("FIA"), the Futures and Options Association ("FOA") and the London Bullion Market Association ("LBMA"), and attended meetings of these associations together.

50.     The FIA's board of directors includes the managing director and global co-head of JPFMI's futures and options and OTC clearing, and Robert T. Cox, the managing director and head of futures of HSBC USA.  Richard Berliand, the chairman of JPMorgan Futures and Options and head of JP Morgan-Bear Stearn's prime brokerage business, serves as a special advisor to the board. As part of FIA, defendants participate in the annual Futures & Options Expo, the FIA/OIC Investor Education Day, the International Derivatives Expo, and other events and meetings.

51.     With regard to the FOA, an industry association for firms and institutions carrying on business in futures, options and other derivatives or which use such products in their business, defendants participate in annual events and conferences such as International Derivatives Week.  In addition, Richard Berliand of JPMFI serves as a special advisor to FOA's Board.

52.     Both JP Morgan Chase and HSBC NA are also members of the LBMA, the London-based trade association that represents the wholesale gold and silver bullion market in London.

53.     Each of the defendants would have taken enormous short positions only if they knew beforehand and were confident that the other defendants would support it and take similar short positions in the market for COMEX silver futures and options contracts.  Absent their collusion, and prior knowledge, it would not be in each of the defendant's independent economic self-interest to take such enormous short positions.

54.     Prior to the conspiracy to manipulate the silver market that is alleged in this Complaint, the silver market had enjoyed remarkable stability for nearly 20 years.  Between the period 1984 through early 2008, the price of silver remained very stable.  However, in early 2008, the price of silver became more volatile, and, consistent with the defendants' massive short

positions, fell into precipitous decline. Such pricing behavior is consistent with the conspiracy alleged herein and supports the acts of conspiracy and manipulation alleged herein.

## CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this action as a class action under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and others similarly situated. The Class is defined as follows:

> All persons or entities other than defendants and their employees, affiliates, parents, subsidiaries or co-conspirators who transacted in COMEX silver futures or options contracts between June 1, 2008 through March 31, 2010.

56.     The Class is so numerous that joinder of all members is impracticable. While the exact number of the class members is unknown to plaintiff at this time, plaintiff is informed and believes that at least thousands of geographically dispersed class members traded COMEX silver futures and options contracts during the Class Period.

57.     Plaintiff's claims are typical of the claims of the other members of the class. Plaintiff and members of the class sustained damages arising out of defendants' common course of conduct in violation of law as complained here. The injuries and damages of each member of the class were directly caused by defendants' wrongful conduct in violation of law as alleged here.

58.     Plaintiff will fairly and adequately protect the interests of the members of the class and has retained counsel competent and experienced in class action litigation, including commodity manipulation and antitrust class action litigation.

59.     Common questions of law and fact exist as to all members of the class which predominate over any questions affecting solely individual members of the class. Among the questions of law and fact common to the class are:

14

    (a)    whether defendants conspired with others to artificially depress and manipulate the price of COMEX silver futures and options contracts in violation of the Sherman Act;

    (b)    whether defendants' conduct manipulated and suppressed the prices of COMEX silver futures and options contracts is violative of the CEA;

    (c)    whether defendants' conduct had an anticompetitive and manipulative effect on the prices of COMEX silver futures and options contracts purchased or sold by plaintiff and the class during the Class Period;

    (d)    whether defendants' conduct injured plaintiff and members of the class; and

    (e)    what are the appropriate measure of damages, under the CEA and federal antitrust laws, sustained by plaintiff and other members of the class as a result of defendants' unlawful activities.

60.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all class members is impracticable. The prosecution of separate actions by individual members of the class would impose heavy burdens upon the courts and defendants and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the class. A class action, on the other hand, would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

61.     The interest of members of the class in individually controlling the

prosecution of separate actions is theoretical rather than practical. The Class has a high degree of

cohesion, and prosecution of the action through representatives would be unobjectionable. The

amounts at stake for class members, which are substantial in the aggregate, are not great enough

individually to enable them to maintain separate suits against defendants. Plaintiff does not

anticipate any difficulty in the management of this action as a class action.

## EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT

62.     Defendants actively and fraudulently concealed the existence of, and their

participation in, the conspiracy and manipulative conduct alleged above. As a result of these acts of

concealment, and secret nature of the defendants' conspiracy and unlawful manipulation scheme,

neither plaintiff, nor the class members had knowledge of the violations alleged here any earlier than

March 23, 2010 when the Informant publicly disclosed the existence of the conspiracy and

manipulative scheme alleged in this Complaint. This Complaint against defendants was filed

thereafter and well within the statutes of limitations applicable to claims under both the Commodity

Exchange Act and the Sherman Act.

63.     Defendants engaged in a successful and illegal conspiracy and manipulation of the

silver futures and options contract market that, by its nature, was inherently self-concealing.

64.     Defendants employed deceptive practices and techniques to avoid detection

of, and to fraudulently conceal, their contract, combination or conspiracy, Because of this, plaintiff

and the Class members could not have discovered the alleged contract, combination or conspiracy

and manipulative activities at an earlier date by the exercise of reasonable diligence, which they did

exercise. Defendants fraudulently concealed the contract, combination or conspiracy alleged here by

various means and methods, including, but not limited to, secret meetings and surreptitious communications.

65.     Because of the secret nature of the defendants' conduct, plaintiff and members of the Class were lulled into believing that the COMEX silver futures and options contracts market was a competitive market, and the prices at which such contracts traded, were the result of market conditions, and not the defendants' collusive and manipulative activities.

66.     The affirmative actions of the defendants alleged here were wrongfully concealed and carried out in a manner that precluded detection.

67.     By virtue of the fraudulent concealment by defendants, the running of any statute limitations has been tolled and suspended with respect to any claims that plaintiff and the Class members have as a result of the unlawful contract, combination or conspiracy alleged in this Complaint.

## COUNT ONE

### VIOLATION OF COMMODITY EXCHANGE ACT, 7 U.S.C. § 25

68.     Plaintiff incorporates by reference the preceding allegations as if they were fully set forth.

69.     Plaintiff and members of the Class bought or sold COMEX silver futures contracts and/or purchased or sold options contracts during the Class Period at prices that were made artificial by defendants' unlawful activities and were injured as a result of defendants' manipulation and suppression of the prices of those contracts.

70.     Defendants' activities constitute manipulation of the prices of COMEX silver futures and options contracts during the Class Period in violation of Sections 9(a) and 22(a) of the CEA, 7 U.S.C. §§ 13(a), 25(a).